### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### WHEELING

RIKKI RUTH,

               Plaintiff,

v.                                           CIVIL ACTION NO.: 5:19CV25
                                           (BAILEY)

ANDREW SAUL,
Commissioner of Social Security,

               Defendant.

## REPORT AND RECOMMENDATION

### I.    Introduction

This case arises from the denial of Plaintiff, Rikki Ruth's ("Plaintiff") application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") benefits.  After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, Nikki Hall ("ALJ") concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff's request for review by Appeals Council was denied, making the ALJ's decision the final decision of Defendant.  Plaintiff seeks judicial review of Defendant's decision.

The undersigned has considered the parties' briefs and the record on appeal.  The facts and legal arguments have been adequately presented.  Accordingly, the decisional process would not be significantly aided by oral argument. Therefore, the recommendations of the undersigned are set forth below.

## II.    Factual/Procedural History

Plaintiff initially filed her application for disability benefits on or about July 30, 2015, which alleged disability beginning on June 1, 2015.  R. 16; 246-47; 258-63.  Plaintiff's claims were denied initially and upon reconsideration.  R. 16; 163-75; 179-92.  Plaintiff requested a hearing before an ALJ, which hearing occurred on October 5, 2017.  R. 16-35; 42-93.  During the hearing, Plaintiff, Plaintiff's father, and Linda Dezack, an impartial vocational expert ("VE") testified.  R. 42-93.  Additionally, Plaintiff moved to amend the onset date, which request was granted.  Plaintiff's onset date was amended to May 31, 2012.  R. 16-17.

In a written decision dated December 8, 2017, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  R. 16-35.  Plaintiff requested review of this decision.  Her request was denied by the Appeals Council.  R. 1-4.  This appeal followed.

Plaintiff filed her Complaint on March 4, 2019.  ECF No. 1.  Defendant filed an Answer on March 4, 2020.[1]  ECF No. 11.  On the same date, Defendant filed a certified copy of the Social Security Administrative Record.  ECF No. 12.  Plaintiff filed her Statement of Errors on June 1, 2020.[2]  ECF No. 18.  Defendant filed a Motion for Summary Judgment and Memorandum in Support on July 1, 2020.  ECF No. 22.

## III.   ALJ Decision

### A.  The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity.  § 404.1520(b).  If the

---

[1] Though Plaintiff filed her Complaint on March 1, 2019, proof of service was not filed until February 24, 2020. ECF No. 9.

[2] Plaintiff requested and was given several extensions of time within which to file her brief.

claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). § 404.1520(d). If impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. § 404.1520(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. § 404.1520(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

### B. ALJ Findings

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025. R. 19. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 31, 2012, the alleged (amended) onset date. R. 19. At step two, the ALJ determined that Plaintiff has the following severe impairments:

slight scoliotic curve with convexity to the right with beginning pseudoarthrosis of the transverse

process of L5 without spondylosis or spondylolisthesis; degenerative disc space narrowing at L4-

L5 with mild neural foraminal stenosis suspected; loss of visual acuity/congenital

nystagmus/cortical age-related cataract/ocular pain right eye; history of Hirschsprung's disease;

status post loop colostomy in December 1999; take-down of colostomy in August 2000;

exploratory laparotomy in January 2013; diagnosis of learning disorder and borderline intellectual

functioning in February 2012; and diagnosis of adjustment disorder with anxiety in October 2015.

R. 19.  However, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  R. 20.

> The ALJ next determined that Plaintiff has the following residual functional capacity:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> subject to additional nonexertional limitations.  More specifically, the work should
> never require the climbing of ladders, ropes, or scaffolds and should not require
> exposure to hazards, such as dangerous unshielded moving mechanical parts,
> unprotected heights, or commercial driving.  The work should be limited to simple,
> routine tasks in occupations having an SVP of 2 or lower, performed in a low stress
> setting, which is defined as having no fast-paced production requirements, such as
> fast paced assembly line work or high volume piecemeal quotas, no greater than
> occasional changes in work routine or work setting and which requires no greater
> than occasional simple work related decision making.  The work should not include
> safety sensitive positions that generally require binocular vision to safely perform
> certain sensitive tasks such as driving emergency vehicles, driving at high speed,
> potentially firing a weapon in a chaotic crowd situation, searching for individuals
> under poor visibility conditions, or running or climbing on uneven and unfamiliar
> terrain.  The work should be located within 500 feet of restroom facilities and
> should not require the use of math above the 4th grade level.

R. 24-25.  The ALJ concluded that Plaintiff has no past relevant work.  R. 34.  Considering the

claimant's age (which is considered to be "younger" as she was 25 years old at the time of the

ALJ's decision), education (she has a high school education and is able to communicate in

English), work experience, and residual functional capacity, the ALJ found that jobs exist in

significant numbers in the national economy that Plaintiff can perform.  R. 34.  Accordingly, the

ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act.  R. 35.

## IV.    Motions for Summary Judgment

### A.    The Standards

#### 1.    Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories

and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

The party seeking summary judgment bears the initial burden of showing the absence of any issues

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  All inferences must be

viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported

motion for summary judgment may not rest upon mere allegations or denials of [the] pleading,

but…must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2.    Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision

is supported by "substantial evidence."  42 U.S.C. § § 405(g), 1383(c)(3).  "Substantial evidence"

is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Hays

v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" is not a "large or

considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988)

(internal citations and quotations omitted).  The decision before the Court is "not whether the

Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds by Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Keeping these standards in mind, the undersigned will discuss the arguments raised on appeal.

### B.  Arguments of the Parties

#### 1.  Plaintiff's Arguments

Plaintiff raises the following assignments of error: (1) the ALJ violated the policy and purpose of SSR 85-15 for evaluating non-exertional impairments and the Social Security Program Operations Manual System, POMS; (2) the ALJ's determination that Plaintiff does not have mental impairments and a combination of physical impairments so as to preclude substantial gainful employment is not supported by substantial evidence; and (3) the ALJ disregarded the opinion of the vocational expert with regard to an employer's tolerance of the Plaintiff's need for substantial accommodations and posed inadequate and unfounded hypotheticals to the VE. *See* ECF No. 18.

#### 2.  Defendant's Arguments

Defendant argues that the ALJ did not err regarding an alleged failure to comply with SSR 85-15 because SSR 85-15 does not apply to this matter. Rather, SSR 83-14 is the ruling that applies. Defendant further argues that the ALJ's RFC assessment is well supported, and that substantial evidence supports the ALJ's disability determination. *See* ECF No. 23.

C.     Discussion

1.     SSR 85-15

Plaintiff first contends that the ALJ failed to conduct an evaluation of Plaintiff's non-exertional impairments pursuant to SSR 85-15, and that the ALJ ignored the opinions of agency evaluators and an independent evaluator with respect to the same.  Plaintiff argues that this failure constitutes reversible error.  Defendant, however, maintains that SSR 85-15 is inapplicable to the case at hand because Plaintiff's RFC contains both exertional and non-exertional limitations.  Thus, the ruling applicable to the instant case is SSR 83-14.  A review of SSR 85-15 reveals that Defendant is correct - SSR 85-15 addresses cases which involve only non-exertional impairments.  *See* SSR 85-15.  SSR 83-14 addresses cases which involve a combination of exertional and non-exertional impairments.  *See* SSR 85-15 and 83-14.  Because the instant matter clearly involves both non-exertional and exertional impairments, SSR 85-15 does not apply to this case.  As a result, this assignment of error is without merit.

2.     RFC Finding and Substantial Evidence

Plaintiff next argues that the ALJ's determination that Plaintiff does not have mental impairments or a combination of physical impairments which preclude her from substantial, gainful employment, is not supported by substantial evidence.  For the reasons that follow, the undersigned would similarly find that this argument is without merit.

a.  Mental Impairments

Plaintiff argues that, despite the ALJ's finding to the contrary, she is unable to perform unskilled work on a sustained basis because of her mental impairments.  Plaintiff further argues that, in arriving at her conclusions vis-à-vis Plaintiff's mental impairments, the ALJ ignored many parts of the longitudinal record, the opinions of three psychologists, and gave little to no weight to

the subjective opinions of Plaintiff, her father, her coworkers, and her supervisor.  These arguments are not persuasive.

A review of the ALJ's opinion (R. 16-35) reveals a comprehensive, detailed, and extensively reasoned opinion which takes into account all of the pertinent evidence of record, including those parts Plaintiff claims the ALJ ignored, i.e. Plaintiff's past childhood and infant medical history; Plaintiff's academic record; the medical evidence of record; the evaluations of three (3) psychologists (Dr. Golas, Dr. Mansuetto, and Dr. Cohen); and the subjective opinions of Plaintiff, her father, her coworkers, and her supervisor.  In arriving at and explaining her RFC finding, the ALJ provided a detailed summary of each of the aforementioned pieces of evidence, she explained her reasoning for assigning specific weight to each piece of evidence, and she analyzed each piece of evidence within the larger context of the longitudinal record.

Moreover, substantial evidence supports the ALJ's RFC finding vis-à-vis Plaintiff's mental impairments.  Specifically, and with respect to Plaintiff's averments regarding anxiety and depression, the undersigned would note that Plaintiff has not treated with a mental health professional for these ailments.  Plaintiff's physician, Dr. Cowher, diagnosed Plaintiff with anxiety in May 2017 and prescribed Effexor and Lexapro, but this appears to be the first time (at least according to the evidence of record) that Plaintiff was diagnosed with and treated for issues related to depression and anxiety.  R. 752-54.  Indeed, a review of Plaintiff's records from her treatment with Dr. Cowher and Dr. Gilman do not reveal any evidence of substantive treatment for these conditions.  R. 558-72; 573-84; 660-700; 745-51.  Rather, and as the ALJ correctly observed, the medical evidence of record reveals that at her medical appointments, Plaintiff generally appeared alert, well oriented, well nourished, oriented x 3, she responded to questions appropriately, and her mood, affect, and judgment were within normal limits.  *See id.*

Additionally, the opinions of Dr. Golas and Dr. Mansuetto support the ALJ's conclusion that Plaintiff is not disabled insofar as her mental impairments.  Dr. Golas evaluated Plaintiff February 2012.  R. 527-36.  Following a consultation and exam, Dr. Golas found Plaintiff to have moderately deficient recent memory, but an otherwise normal mental status examination.  She displayed average grooming and hygiene, made fair eye contact, was responsive and spontaneous in her speech with a euthymic mood.  She displayed fair insight and normal judgment with no perceptual deficits.  Plaintiff was found to be in the minimal range for depression and anxiety upon testing.  Dr. Golas administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), and, based on the same, concluded that Plaintiff's social functioning, concentration, persistence, pace, and immediate memory were within normal limits.  It is notable that Plaintiff's reading level was determined to be 5.4 grade level, and her arithmetic ability at a 4.8 grade level.  R. 534.  However, the ALJ accounted for these deficiencies in her RFC finding.  R. 24-25.

In October 2015, Dr. Mansuetto conducted an updated examination of Plaintiff.  R. 602-07.  At the examination, Dr. Mansuetto noted that Plaintiff appeared anxious, but nevertheless displayed a cheerful mood, and a cooperative attitude, coherent speech, normal orientation, and broad affect.  She also displayed normal thought processes, thought content, and perceptual abilities; adequate insight; normal judgment, immediate memory, remote memory, persistence, and pace.  R. 605-06.  She was found to be mildly deficient in concentration and markedly deficient in recent memory.  R. 606.  Dr. Mansuetto attempted to administer the WAIS-IV testing but felt that the scores were low because of her anxiety during testing.  Notwithstanding, Dr. Mansuetto felt that Plaintiff's prognosis was "good," and felt that Plaintiff should continue working and that she could handle her own finances.  R. 606.

Of the three psychologists Plaintiff cites, only Dr. Cohen opined (R. 553-57) that Plaintiff would be unable to perform work at even the unskilled level given the nature of her mental impairments. Plaintiff relies upon this opinion a great deal in her brief. However, the undersigned would note that the ALJ assigned little weight to the same. In particular, the ALJ noted that Dr. Cohen's opinions as to the extent of Plaintiff's mental limitations were not supported by the longitudinal record. After reviewing the administrative record, the undersigned would agree with this assessment. Indeed, when read in conjunction with the balance of the record and with the other expert opinions, Dr. Cohen's opinion appears to be a lone outlier in terms of Plaintiff's residual mental abilities.

Further, the ALJ found credibility issues with Dr. Cohen's report insofar as Dr. Cohen's meeting and/or examination of Plaintiff was arranged by Plaintiff's counsel. Such an observation is not entirely unreasonable, especially given the fact that Dr. Cohen's is the only opinion to find that Plaintiff's mental limitations preclude her from performing work on a sustained basis and is therefore arguably the most favorable piece of evidence to Plaintiff within the record. Additionally, the undersigned would note that Dr. Cohen's opinions appear to be based in large part (though not exclusively) upon Plaintiff's and Plaintiff's father's subjective account of her impairments. This is contrasted with the primarily objective nature of both Dr. Golas's and Dr. Mansuetto's examinations. As a result, the ALJ's decision to assign more weight to Dr. Golas's and Dr. Mansuetto's opinions than to Dr. Cohen's opinions is well-supported.

The ALJ also noted that Dr. Cohen's ultimate opinion, that Plaintiff demonstrated marked limitations in her ability to perform work-based functions, was of little meaning because the term 'marked limitation' was not defined in Dr. Cohen's report. Such an observation is well taken. In his report, Dr. Cohen used the phrase 'marked inability to act appropriately with the public, co-

workers, and supervisors.'   However, Dr. Cohen he did not explain this finding in more detail.

Without more, it is difficult to place Dr. Cohen's opinion into the context of this case as a whole.

Such difficulty is made even more apparent where no other evidence supports such a finding.

Finally, Plaintiff seems to suggest that the ALJ's opinion regarding Plaintiff's mental

impairments and her RFC was prejudiced by personal circumstances.   However, a review of the

record reveals that the same does not support this argument.   Rather, it appears to the undersigned

that the ALJ was attempting to sympathize with Plaintiff and with her father regarding their life

circumstances.   There is no indication that such an effort was the result of prejudiced bias.   Further,

even if the hearing transcript could be read as suggesting such bias, the ALJ's ultimate

memorandum opinion cannot be read the same way.   The opinion, which covers approximately

nineteen (19) pages, provides a detailed account and analysis of the medical evidence of record,

as well as the subjective evidence provided by Plaintiff.   The ALJ's extensive explanations are

clearly drawn therefrom.   As such, it would be unreasonable to conclude that the ALJ's decision

is simply the result of a privately held belief or opinion.

### b.  Back Impairments

Plaintiff next contends that the ALJ erred when she found that Plaintiff's lumbar spine

impairment does not meet or medically equal the requirements of the Listings.   Defendant

maintains that substantial evidence supports the ALJ's RFC finding with respect to Plaintiff's

lumbar spine impairments, and specifically accommodated this impairment by limiting Plaintiff to

only light work with no climbing of ladders, ropes, or scaffolds.   For the reasons that follow, the

undersigned would agree with Defendant and would conclude that substantial evidence supports

the ALJ's conclusion that Plaintiff's back impairment does not meet or exceed the Listings.

11

The ALJ evaluated Plaintiff's lumbar spine impairment pursuant to Listing 1.02 (musculoskeletal listings). To qualify under Listing 1.02, Plaintiff must demonstrate that she suffers from a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture. Additionally, the disorder of the spine must result in a compromise of a nerve root (including the cauda equina) or the spinal cord with one of the following: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or (2) spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe or burning or painful dysesthesia, resulting in the need for changes in posture more than one every 2 hours; or (3) lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. There is no evidence that Plaintiff suffers from any of the aforementioned impairments.

In support of her argument on this point, Plaintiff cites an x-ray taken in 2015 of Plaintiff's lumbar spine which Plaintiff contends demonstrates she suffers from degenerative disc disease, vertebral fracture, and pain. However, a review of the cited medical record (R. 580) reveals that this is not the case. Plaintiff presented to Weirton Medical Center on 5/14/2015 for an x-ray of her lumbar spine at the recommendation of her primary care physician, Dr. Cowher, due to complaints of pain starting in the front and radiating into her low back for approximately one month. According to Dr. Thomas Neis, M.D., the reading physician, the x-ray showed the

beginnings of pseudoarthrosis of the transverse process of L5.  Importantly, no significant compression fracture, spondylolysis, or spondylolisthesis was seen.  R. 580.

Moreover, there is no indication, either from the x-ray record or from any of Dr. Cowher's records (R. 574-84; 752-65) that Plaintiff was diagnosed with degenerative disc disease or vertebral fracture.  Even if Plaintiff had been diagnosed with the same, there is no medical evidence to support a conclusion that Plaintiff suffered from nerve root compression, spinal arachnoiditis, or lumbar stenosis resulting in pseudo-claudication, as a result therefrom.  Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's back impairment does not meet or medically exceed the Listing requirements for Listing 1.00, and specifically Listing 1.04.

### c.  Vision Impairments

Plaintiff next argues that the ALJ 'discounted' Plaintiff's visual impairments.  Though it is not specifically stated, it appears that Plaintiff makes this argument vis-à-vis the ALJ's RFC finding.  In other words, it appears that Plaintiff contends the ALJ's RFC finding did not properly account for Plaintiff's visual impairment.  Rather, and instead of focusing on how Plaintiff's visual impairments affect her ability to sustain gainful employment, Plaintiff argues that the ALJ "merely quoted measurements."  For the reasons that follow, the undersigned would conclude that this argument is without merit.

As stated above, the ALJ found that Plaintiff has the RFC to perform light work defined in 20 C.F.R. 404.1567(b) and 416.967(b) subject to additional nonexertional limitations, which include Plaintiff's visual impairments. R. 24-25.  Specifically, the ALJ found that Plaintiff's work should not include positions that generally require binocular vision to safely complete.  *See id.* The RFC also included the following limitations, which can also reasonably be considered vis-à-vis Plaintiff's visual limitations: that Plaintiff's position should not require exposure to hazards

13

such as dangerous unshielded moving mechanical parts, unprotected heights, or commercial driving.  R. 24-25.  In so finding, the ALJ noted Plaintiff's subjective complaints with respect to her vision and headaches.  R. 25.  The ALJ went on to consider Plaintiff's visual impairments and the treatment she has received for the same, as reflected in the longitudinal record (R. 26; 507-26; 573-84; 752-65; and 799-809).  Finally, the ALJ specifically noted Plaintiff's treatment with ophthalmologist Dr. Lee at Lee Surgery Center in August 2017, which medical evidence demonstrated almost no visual acuity in the right eye, but 20/60 in the left.  R. 27; 799-809.  The ALJ compared this measurement to the other visual medical evidence of record and noted that Plaintiff's visual acuity did not change substantially over the course of approximately 20 years (in 1996 – her left eye measured 20/30; in 2015 – her left eye measured 20/40).  The balance of her exams with Dr. Lee were noted to be unremarkable.  *Id*.

Though Plaintiff argues the aforementioned observations amount to 'just measurements,' this argument misses the point.  The measurements recounted by the ALJ, combined with the unremarkable examinations noted in the medical records, support the ALJ's conclusion that Plaintiff's visual impairments do not impede her ability to perform unskilled, sustained work. Indeed, a measurement of 20/60 appears to be not particularly noteworthy to Dr. Lee as there is no specific comment related thereto in his medical records.  As for Plaintiff's complaints of pain and floaters, Dr. Lee recommended conservative maintenance in the form of follow up examination and a possible a referral to pain management physician.  No other substantial treatment appears to have been discussed or suggested.  Substantial evidence therefore exists for the ALJ's conclusion that the frequency, intensity, and persistence of Plaintiff's visual impairments does not rise to the level of Plaintiff's claims regarding the same, and that Plaintiff's visual impairments will not impede her ability to perform sustained work at the unskilled level.

#### d. Urinary Impairments

With respect to this impairment, the undersigned would note that it is unclear from Plaintiff's brief the nature of the error which Plaintiff believes the ALJ committed. While Plaintiff cites the records of Dr. Gilman (660-700; 745-51; 796), Plaintiff's gynecologist, who in July 2017 opined that Plaintiff 'should not lift too much,' and that 'frequent' restroom breaks were needed for her condition, (R. 796), Plaintiff fails to specify the relevance of this evidence. The vague nature of these opinions does nothing to shed a light on what Plaintiff might believe is the specific deficiency vis-à-vis the ALJ's RFC finding as it relates to Plaintiff's urinary impairment. As a result, the undersigned is unable to meaningfully consider any arguments with respect to this impairment.

Notwithstanding the above, the undersigned would nevertheless conclude that the ALJ's findings regarding Plaintiff's urinary impairment are supported by substantial evidence. In her opinion, the ALJ noted that Dr. Gilman's opinions were so vague as to be unhelpful in determining the nature and extent of Plaintiff's urinary impairment. Further, the ALJ noted the primarily conservative treatment rendered for the same and the largely transitory nature of this impairment. Even so, the ALJ took into consideration Plaintiff's averments with respect to her urinary impairment and accommodated this impairment via the 500-feet from a restroom provision of the RFC. The undersigned would note that the ALJ did so despite the dearth of evidence to support such a limitation.

#### e.   Other Arguments

In the balance of section II of Plaintiff's brief, Plaintiff argues that the ALJ disregarded her duty to adequately investigate and develop the record, and that the ALJ 'cherry-picked' evidence to satisfy the ALJ's denial of Plaintiff's claim for benefits. The undersigned is not persuaded by

these arguments.  With respect to the argument that the ALJ failed to adequately investigate and develop the record, the undersigned would note that Plaintiff has failed to identify that area or those areas of the record which the ALJ specifically and allegedly failed to develop. Notwithstanding this, the undersigned has reviewed the evidence of record and would find that the record does not contain any obvious deficiencies such that a meaningful decision cannot be made on the merits.

With respect to Plaintiff's argument that the ALJ 'cherry-picked' certain medical records to artificially support the ALJ's finding of 'no disability,' the undersigned would similarly find that this argument is without merit.  Indeed, a review of the ALJ's opinion reveals that the opinion is detailed, and well-supported by the evidence of record.  There is no record or segment of the evidence of record that the undersigned has seen which would support a significant deviation from or opposition to the ALJ's RFC findings.  Rather, substantial evidence exists to support the ALJ's RFC finding.

### 3.     The ALJ and Vocational Expert Hypotheticals

Plaintiff argues that the ALJ asked the VE a hypothetical that included binocular vision, despite there being no evidence that supports such a hypothetical.  This argument is without merit. The ALJ very clearly asked the VE a hypothetical which included provision for no binocular vision.  R. 84 ("And if I were to add to that hypothetical the work **should _not_ include safety sensitive positions that generally require binocular vision**…") (emphasis added).

Plaintiff further contends that the ALJ's hypotheticals excluded the nature of Plaintiff's urinary urgency, her anxiety, lumbar impairments, and her pain.  This is not correct.  The ALJ's hypotheticals very clearly provided for Plaintiff's anxiety, her lumbar impairments, and her pain (R. 83-84), as well as her urinary urgency (R. 84-85).

The ALJ gave due consideration to the opinions expressed by the VE.  The ALJ's findings and conclusions appropriately incorporate these opinions.

## V.        Recommendation

Substantial evidence supports the ALJ's findings and conclusions.  Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Statement of Errors [ECF No. 18] be **DENIED** and Defendant's Motion [ECF No. 22] for Summary Judgment be **GRANTED**.

**Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.**

**A copy of such objections should be submitted to the District Judge of Record. <u>Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation</u>. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).**

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West

Virginia.    The Court further **DIRECTS** the Clerk to mail a copy of this Report and

Recommendation to any pro se party by certified mail, return receipt requested, to their last known

address as reflected on the docket sheet.


       Respectfully submitted this  4<u>th</u>  day of <u>December 2020</u>.



*/s/ James P. Mazzone*
                
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE